UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY A. WILLIAMS,

        Petitioner,

vs.                            Case No. 3:16-cv-589-J-39JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____

**ORDER**

**I. Introduction**

In his Amended Petition for Writ of Habeas Corpus (Petition; Doc. 5), Anthony Williams challenges a 2009 Duval County judgment of conviction on four counts of conspiracy to traffic in cocaine.[1] As directed by this Court's Order (Doc. 8), Respondents filed an Answer in Response to the Petition (Response; 19).[2] Petitioner submitted a Reply (Reply; Doc. 21).[3]

Petitioner raises four grounds: (1) the ineffective assistance of counsel for failure to obtain and review surveillance

---

[1] Petitioner has served his sentence and has been released from custody.

[2] The Court will cite to the exhibits in the Appendix as "Ex." Where provided, the page numbers referenced for the exhibits are the Bates stamp numbers at the bottom of each page. Otherwise, the page number on the particular document will be referenced.

[3] The Court construes Petitioner's response to this Court's order to show cause (Doc. 21) as his Reply. See Order (Doc. 22).

evidence and failure to move to suppress that evidence; (2) the state's failure to disclose public records pursuant to a records request; (3) the ineffective assistance of counsel for failure to investigate surveillance evidence and failure to move to suppress that evidence; and (4) ineffective assistance of counsel for failure to move to suppress wiretap evidence. Petition at 5, 7, 8, 9. Respondents concede Petitioner exhausted his state court remedies as to all grounds. See Response at 14, 19, 23, 25 (citing Ex. G at 1-44).[4]

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254. "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017) (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

---

[4] Respondents do not dispute the timeliness of the Petition. The Court assumes for purposes of this order that the Petition is timely.

2

The first task of a federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for its decision to qualify as an adjudication on the merits. <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the district court should presume the unexplained decision adopted the reasoning of the lower court, as recently pronounced by the Supreme Court:

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption is rebuttable by a showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision. <u>Id.</u> at 1192, 1196.

When a state court has adjudicated a petitioner's claim on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The burden of proof is high; "clear error will not suffice." Va. v. LeBlanc, 137 S. Ct. 1726, 1728 (2017). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

As such, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe v. Warden, 834 F.3d 1323, 1338 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)).

The AEDPA standard is intended to be difficult for a petitioner, who carries the burden of proof, to meet. Richter, 562 U.S. at 102. A district court's obligation is to "train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92). A federal district court must give appropriate deference to a state court decision on the merits. Wilson, 138 S. Ct. at 1192. Appropriate deference

requires the court to defer to the reasons articulated by the state, if they are reasonable. Id.

### III. Ineffective Assistance of Counsel

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. To demonstrate his trial counsel was ineffective, Petitioner must satisfy a rigorous two-prong test by showing (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). Restated, a criminal defendant's Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland, 466 U.S. at 687). The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. Strickland, 466 U.S. at 695.

The two-prong Strickland test applies when a petitioner challenges his counsel's performance with respect to the entry of a guilty plea such that a petitioner still must demonstrate counsel's performance was deficient. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). To establish prejudice, however, a petitioner

must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

When a petitioner claims his counsel was ineffective, "[r]eviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). When the "strong presumption" standard of Strickland is applied "in tandem" with the highly deferential AEDPA standard, a review of the state court's determination as to the "performance" prong is afforded double deference. Richter, 562 U.S. at 105.

Accordingly, the question for a federal court is not whether trial counsel's performance was reasonable, but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," a federal court may not disturb a state-court decision denying the claim. Id. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## IV. Findings of Fact & Conclusions of Law
### A. Grounds One, Three, & Four

Petitioner raises essentially the same claims in grounds one, three, and four. Accordingly, they will be addressed together. In

grounds one, three, and four, Petitioner claims his counsel was ineffective for his failure to investigate, obtain, and review available "material evidence," including "wire intercept affidavits, application and orders for DNR's pen registers, trap and trace(s) and enhanced caller I.D. inst[a]llation and use." See Petition at 5, 8, 9. According to Petitioner, had his counsel obtained and reviewed the wiretap evidence, he would have filed a motion to suppress, and if such a motion were successful, Petitioner would not have entered a guilty plea. Id. at 5, 8, 9. Petitioner further claims, "the trial court failed to exercise sound, reasonable, and legal decision making," though he provides no explanation for this assertion. Id. at 5, 8, 9.

Petitioner exhausted these claims in grounds one, three, and four of his motion and amended motion for post-conviction relief under Rule 3.850, Ex. G at 1-10, 30-33, and by appealing the trial court's denial of his post-conviction motions. Id. at 139. The First District Court of Appeal (DCA) affirmed the decision of the trial court without opinion. Ex. H.[5]

---

[5] Petitioner also filed a Rule 3.800 motion to correct an illegal sentence, see Ex. I at 1, which the trial court construed as a Rule 3.850 motion, id. at 22. The trial court denied his motion, id., and the First DCA affirmed, Ex. J. In the instant petition, Petitioner does not raise the claim he asserted in his construed Rule 3.850 motion.

In its order denying Petitioner's motions for post-conviction relief, the trial court set forth the applicable two-prong Strickland test and recognized the nuances of the prejudice prong analysis in the context of a guilty plea. Ex. G at 46.[6] The record shows the First DCA affirmed the decision of the trial court in denying these grounds. Ex. H. Under Wilson, this Court presumes the First DCA adopted the reasoning of the trial court, and the state has not attempted to rebut this presumption. Wilson, 138 S. Ct. at 1192.

In denying Petitioner's motions for post-conviction relief, the trial court found defense counsel's "performance did not fall below the standard of reasonable assistance as described in Strickland." Ex. G at 48. The trial court found the state disclosed to defense counsel evidence related to electronic surveillance and made the evidence available for inspection and copying. Id. at 47. At a status conference, defense counsel informed the court that discovery was ongoing, id., and at the final pretrial conference, defense counsel made an oral motion and stated that though he had trouble talking with Petitioner about the case, "he had done everything he had been asked to do." Id. at 48 (emphasis in

_____

[6] As this Court does, the trial court addressed Petitioner's three grounds for ineffective assistance of counsel together, recognizing they "are strikingly similar and intertwined, and all rely on the same set of supporting facts." Ex. G at 46-47.

original). The trial court also noted Petitioner recognized he understood his counsel "would file all motions and share all pertinent information with him," and Petitioner never complained his counsel was "not investigating or sharing information with him." Id. (emphasis in original).

The trial court also found any alleged deficiencies were not prejudicial to Petitioner. First, the court noted Petitioner's negotiated sentence of twelve years was "considerably less than the life sentence he could have received if the State had proceeded with Habitual Felony Offender classification," and the plea agreement waived the minimum mandatory sentence of fifteen years on count one. Id. Second, the trial court summarized the state's evidence, which indicated "the strength of the information that would have been used against the [Petitioner] at trial." Id. For example, eight of Petitioner's co-defendants were listed as state's witnesses against Petitioner, and the state had a DVD of an undercover buy from Petitioner. The trial court also referenced the "very detailed" arrest and booking report and testimony of the lead investigator offered at Petitioner's sentencing hearing. Id. As to the entry of Petitioner's plea, the trial court found,

> The [Petitioner] entered into a voluntary plea
> agreement that carried a much lighter sentence
> than the thirty (30) years of incarceration
> (with mandatory minimums) that could have been
> imposed for each count had he gone to trial.
> He indicated that he had read the plea
> agreement and understood that the negotiated

sentence was for a term of incarceration of between four (4) and fifteen (15) years, with no mandatory minimum.

Id. at 49.

The record demonstrates the trial court properly applied the Strickland standard and found no deficient performance on the part of counsel and no prejudice to Petitioner's defense. Petitioner appealed the denial of his Rule 3.850 motion, and the First DCA affirmed the trial court's decision. Ex. H. Under Wilson, the Court presumes the First DCA adopted the reasoning of the trial court. Upon review, Petitioner is unable to establish the Florida court's decision is inconsistent with Supreme Court precedent, including Strickland and Hill, or is based on an unreasonable determination of the facts. Accordingly, under AEDPA's deferential standard, Petitioner is not entitled to habeas relief on grounds one, three, and four.

Even if the state appellate court's adjudication of the claims raised in grounds one, three, and four is not entitled to deference, the claims are without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). "Courts . . . should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight." White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992). The standard

for effectiveness is not perfection; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995).

An attorney's failure to move to suppress damaging evidence due to his ignorance of the law or a lack of factual investigation can constitute deficient performance under Strickland. See Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010) (holding counsel's failure to file a motion to suppress constituted deficient performance where the attorney conceded he misread a fraudulent probable cause affidavit and admitted his failure to file a motion was not the result of a conscious choice made with full knowledge of the facts). However, the Supreme Court has stressed the importance of adhering to Strickland's deferential standard "when reviewing the choices an attorney makes at the plea bargain stage." Premo v. Moore, 562 U.S. 115, 125 (2011). A plea bargain is a result of complex negotiations requiring defense counsel to make strategic decisions that include both risk and opportunity. Id. at 124. The Supreme Court explained:

> In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference

> that must be accorded counsel's judgment and
> perspective when the plea was negotiated,
> offered, and entered.

Id. at 126. See also Brown v. United States, 219 F. App'x 917, 918
(11th Cir. 2007) ("Unless the petitioner can rebut the 'strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance,' he cannot establish that
counsel's performance was constitutionally deficient.").

Applying the highly deferential Strickland standard, the
Court finds defense counsel's performance did not fall below the
standard of reasonable assistance. Petitioner fails to point to
obvious deficiencies in his counsel's performance to account for
counsel's failure to move to suppress the surveillance evidence.
Rather, Petitioner simply asserts, "[h]ad counsel investigated
material evidence, the counsel discovered evidence [sic] to move
for suppression of wiretap evidence." Petition at 8.

Petitioner's bald assertion that his counsel failed to
investigate the evidence is conclusory and not supported by the
record. On the contrary, the record reflects the parties exchanged
discovery in compliance with the Florida Rules of Criminal
Procedure, which included disclosure of surveillance evidence the
state made available for defense counsel's review. See Ex. G at
64-65, 123-27. And, at Petitioner's request, defense counsel
issued subpoenas for the depositions of the state's witnesses,

some of whom were Petitioner's co-defendants.[7] Ex. A at 62-74; Ex.

B at 229.

Even more, the record demonstrates defense counsel's recommendations to his client were made with full knowledge of the relevant evidence and facts. For instance, on September 17, 2009, defense counsel explained to the trial court the difficulties he encountered communicating with Petitioner, the work he had done on Petitioner's case, the weight of the evidence against Petitioner, and the prison time Petitioner faced in the absence of a plea:

> I've never been able to get [my client] to actually communicate with me. I thought that was just an issue between me and him. We've done depositions, he's asked for depositions, the offer in the case has been – has dropped down to waiving minimum mandatory . . . . [Petitioner]'s got probably six cases, plus some unrelated sale cases that have not been filed, however, they can be against them in conspiracy [sic] that are actually on video; four or five flip codefendants; a search warrant which revealed drugs in the house; and he's looking at up to 240 years in prison. And basically I just can't get anything across to him so –

Ex. B at 228-29. Moreover, at the sentencing hearing, defense counsel stated Petitioner appreciated the strength of the state's case, knew his co-defendants had testified in their depositions

---

[7] The record is silent as to whose depositions defense counsel took, though it is clear some depositions were taken and elicited testimony damaging to Petitioner. See Ex. G at 114.

that Petitioner sold them drugs, and knew his co-defendants were willing to testify against him at trial. Ex. G at 114.

Petitioner fails to suggest, much less demonstrate, that a motion to suppress would have been successful or that his counsel's decision not to file one was anything but strategic and made with full knowledge of the facts and applicable law. See Zakrzewski v. McDonough, 455 F. 3d 1254, 1261 (11th Cir. 2006) (holding the petitioner failed to demonstrate his attorneys' decision "not to file a motion to suppress the evidence discovered during [a] warrantless search was a course no competent counsel would have taken under the circumstances."). Petitioner, therefore, fails to carry his burden to show his counsel's conduct did not fall "within the wide range of reasonable professional assistance." Brown, 219 F. App'x at 918.

Even assuming defense counsel's performance was deficient, Petitioner is unable to demonstrate the deficiency was prejudicial to his defense. See Premo, 562 U.S. at 129 ("A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence."). As noted, Petitioner offers no legal or factual basis for the filing of a motion to suppress. Cf. Brown, 219 F. App'x at 919 (holding the outcome of the case would not have been different had counsel moved to suppress evidence prior

to the petitioner's plea because a motion to suppress would have failed). Petitioner simply claims had "[a] motion to suppress prevailed . . . [he] would not have entered the plea." Id. at 9.

Petitioner's assertions amount to speculation and conjecture. Accordingly, this Court is unable to conclude he demonstrates prejudice. See Fayson v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 771, 774 (11th Cir. 2014) (recognizing speculative assertions are insufficient to demonstrate "prejudice" under Strickland); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (ruling a petitioner is not entitled to an evidentiary hearing when his claims of ineffective assistance of counsel are based on conclusory allegations). See also Richter, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

Not only are Petitioner's assertions speculative, the strength of the state's case against him further indicates any deficiency of his defense counsel was not prejudicial. The arrest report includes the probable cause determination of the lead investigator with the Jacksonville Sheriff's Office (JSO), Detective Cook. Ex. G at 129-31. Detective Cook explained that, in the course of investigating multiple individuals engaged in a drug conspiracy, he received information about Petitioner's activities from a confidential reliable source (CRS). Id. at 130. Detective Cook concluded the information provided by the CRS was "consistent with other information provided by other investigative techniques

[he] employed . . . during the course of the investigation." Id.
From the CRS, Detective Cook learned Petitioner sold cocaine to
four individuals in amounts that constitute trafficking. Id. at
130-31.

In addition, the state named seven cooperating co-defendants
as witnesses, at least three of whom the CRS identified as having
purchased cocaine directly from Petitioner. Id. at 123-26.[8] The
state specifies that one of the cooperating co-defendants would
testify "[s]he knew [Petitioner] dealt crack cocaine, which he
would get from [a source] approximately two times a week." Id. at
126. Moreover, the state disclosed in a third supplemental
discovery exhibit that four co-defendants entered plea agreements
with the state. Ex. A at 36. The state's case was mounted on more
than testimony of cooperating co-defendants; in its sixth
supplemental discovery exhibit, the state disclosed as evidence a
video recording of an "undercover buy from [Petitioner]." Ex. G at
127.

By the time Petitioner entered his plea, the state's case had
already become "formidable." See Premo, 562 U.S. at 129. At the
sentencing hearing, Petitioner's counsel informed the trial court

---

[8] The trial court found the record reflects eight co-
defendants were listed as state's witnesses. This Court's review
of the record shows seven co-defendants were listed as witnesses.
Whether the state had seven or eight co-defendants prepared to
testify against Petitioner does not alter the Court's conclusion
that the state's evidence against Petitioner appeared strong.

Petitioner appeared to appreciate the weight of the evidence against him. Ex. G at 114. Counsel stated the following:

> [Petitioner] does admit through the course of his plea that he was involved [in drug transactions], and that the State could prove certain sales against him that certain people did come through in their depositions and admit that he did, in fact, sell drugs to them, and that was part of a bigger picture that the prosecution was investigating.

Id.

The record also demonstrates the plea agreement resulted in a substantially reduced sentence of twelve years. Id. Ex. A at 43; Ex. B at 237-38. In exchange for his negotiated pleas of guilty to all four counts of conspiracy to traffic in controlled substances, the state waived the Habitual Offender Classification, which carried a life sentence, see Ex. A at 43; Ex. B at 238, and waived the minimum mandatory of fifteen years on count one of the indictment, Ex. B at 237.

At sentencing, Petitioner confirmed he voluntarily entered in the plea agreement and understood the sentencing ranges. Id. at 238. After Petitioner was sworn in, the trial judge engaged Petitioner in the following plea colloquy:

> THE COURT:     Mr. Williams, are you under the influence of alcohol or drugs today?

> THE DEFENDANT: No, sir.

> THE COURT:     Can you read, write, and understand the English language?

THE DEFENDANT: Yes, sir.

THE COURT: Your counsel has entered pleas of guilty on your behalf to four offenses of conspiracy to traffic in controlled substances.

The first count carries a minimum mandatory sentence of 15 years up to 30 years, and each of the other counts carry a minimum mandatory sentence of 3 years up to 30 years; however, because there's a plea agreement in your case, I intend to sentence you somewhere between 4 and 15 years. Do you understand that?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Have you read this Plea of Guilty and Negotiated Sentence Form I'm holding up (indicating)?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand everything that's in it, including the rights you give up when you plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: And is that your signature on the last page (indicating)?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Bossen [Petitioner's counsel], do you stipulate there's a factual basis for the plea?

MR. BOSSEN: So stipulated, Your Honor.

Id. at 237-39. Petitioner's solemn declarations in court carry a

strong presumption of truth. Blackledge v. Allison, 431 U.S. 63,

74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (recognizing statements made under oath at a plea colloquy are presumed true). Thus, Petitioner's representations that he understood the plea agreement and the rights he was giving up "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74.

Finally, by signing the plea agreement, Petitioner agreed he entered the plea freely and voluntarily. Ex. G at 53. The signed agreement also bound Petitioner to the following:

> I have had ample time to discuss this agreement with my attorney. My attorney and I have read this agreement regarding my guilty plea together in private, and my attorney has explained all portions of this agreement to my complete understanding and satisfaction. We have fully discussed all aspects of this case, including all possible defenses to all charges … My attorney has given me the opportunity to ask questions and has answered all of my questions fully and completely. My attorney has taken all actions requested by me, or has explained to my satisfaction and agreement why such actions should not be taken, and I concur with my attorney's decisions in that regard.

Id. at 52.

All of the above reflects Petitioner voluntarily entered into a plea agreement that resulted in a substantially reduced sentence than what he could have received had he been adjudicated guilty at trial. Petitioner fails to demonstrate he would not have entered a guilty plea but for his defense counsel's deficient performance.

Indeed, the record indicates that as early as one year before the parties reached an agreement, Petitioner was aware of his counsel's efforts to negotiate a plea, and it appeared Petitioner participated to some extent in setting the terms. Ex. B at 189-90. In November 2008, Petitioner stated at a hearing before the trial judge that he understood, based on information provided by defense counsel, that counsel was negotiating a deal on his behalf and Petitioner stated, "[t]hey made me a promise to talk to the detectives and get my bond dropped or whatever." Id.

For these reasons, Petitioner is unable to demonstrate his counsel's performance was deficient and prejudicial. Petitioner's failure to overcome the highly deferential review this Court must undertake forecloses relief under AEDPA. Accordingly, claims one, three, and four are denied.

### B. Ground Two

Petitioner claims the state failed to disclose public records to him, violating his due process and equal protection rights. Petition at 7. He further states a claim for denial of records pursuant to a public records request is "cognizable in a postconviction motion," citing a Florida Supreme Court case. Id. (citing Mordenti v. State, 711 So. 2d 30 (1998)). Petitioner exhausted this claim by raising it in his motion and amended motion for post-conviction relief under Rule 3.850, Ex. G at 1-10, 30-33, and by appealing the trial court's denial of his post-

conviction motions. Id. at 139. The First DCA affirmed the decision of the trial court without opinion. Ex. H.

In its order denying Petitioner's 3.850 motion, the trial court found Petitioner's documentation was insufficient to demonstrate the state failed to comply with his public records request. The documentation Petitioner provided was a Florida Bar complaint written by him, a response to the Bar complaint, and a document/letter that stated, "[t]he wire tap document you requested is sealed and can not be furnished to you by our office." Id. at 49. The trial court noted the "document/letter" was not on letterhead, had no seal, no signature, and no identifying information as to its source. Id. at 49-50. Accordingly, the trial court could not conclude the state failed to disclose public records to Petitioner. The trial court further recognized the state fulfilled its obligation to Petitioner when it "disclosed all pertinent information regarding the wiretaps during discovery, and allowed defense counsel an opportunity to inspect or copy pertinent audio tapes and surveillance reports." Id. at 50.

The Supreme Court has made clear that federal habeas relief is unavailable when a petitioner's claim involves a review of a state's interpretation of its own laws. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"). Habeas review is so limited because § 2254 permits a prisoner to

challenge the fact or duration of his custody to the extent he is held "in violation of the Constitution or laws or treaties of the United States." § 2254(a). See also Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1326 (11th Cir. 2010) (recognizing "a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (internal quotation marks omitted) (quoting McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992)). Accordingly, § 2254(a) makes it clear "that a habeas petition grounded on issues of state law provides no basis for habeas relief." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Even when a petitioner couches alleged violations in terms of "equal protection and due process," habeas review is not appropriate if the relief sought is "based exclusively on state law issues." Id.

Petitioner asks the Court to review the state court's findings regarding his public records request, a matter of state law. Accordingly, he is not entitled to federal habeas relief under § 2254.[9] See Estelle, 502 U.S. at 67-68. Nevertheless, the trial

---

[9] As such, Petitioner's reliance on Mordenti is misplaced. In Mordenti, the Florida Supreme Court recognized a denial of public records is cognizable in a post-conviction motion under Rule 3.850 because the requested records may support the petitioner's 3.850 motion. See 711 So. 2d at 32. Here, Petitioner seeks federal habeas relief under § 2254. As noted, a claim that involves review of a state's interpretation of its owns laws is not cognizable under § 2254.

court's determination that the state fulfilled its obligation to Petitioner to disclose surveillance evidence is not unreasonable. The record reflects the state disclosed surveillance evidence to defense counsel and made the evidence available for inspection. Ex. G at 64-65. Moreover, a review of the record shows Petitioner sent his public records request to the state attorney's office after he was sentenced. Petitioner was sentenced on November 5, 2009, Ex. G at 45, and his records request is dated January 6, 2010, id. at 38. Accordingly, any failure by the state to fulfill the records request could not have impacted the fact or duration of Petitioner's custody. See § 2254(a). For these reasons, ground two is denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 5) is **DENIED.**

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[10] The **Clerk** shall

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542

terminate from the pending motions report any motion to proceed on

appeal as a pauper that may be filed in this case. Such termination

shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of

May, 2019.

_____
BRIAN J. DAVIS
United States District Judge


Jax-6
c:
Anthony A. Williams
Counsel of Record

---

U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484
(2000)), or that "the issues presented were 'adequate to deserve
encouragement to proceed further,'" Miller-El v. Cockrell, 537
U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S.
880, 893 n.4 (1983)). Upon due consideration, this Court will deny
a certificate of appealability.